James C. Mahan
U.S. District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BUESING CORPORATION, | Case No. 2:16-CV-1439 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| HELIX ELECTRIC OF NEVADA, LLC, | |
| Defendant(s). | |

Presently before the court is defendant/counter claimant Helix Electric of Nevada's ("Helix") motion for partial summary judgment. (ECF No. 33). Plaintiff/counter defendant Buesing Corporation ("Buesing") filed a response (ECF No. 40), to which Helix replied (ECF No. 44).

Also before the court is Buesing's motion for partial summary judgment. (ECF No. 41). Helix filed a response (ECF No. 45), to which Buesing replied (ECF No. 48).

**I.  Facts**

The instant action involves a contractual dispute between a contractor and subcontractor.

On August 7, 2015, Helix and Buesing entered into a subcontract ("the contract") for the purpose of pile driving for a solar project. (ECF No. 33, Ex. 3). Pursuant to the contract, Buesing was to perform its work in accordance with certain project documents including the SNWA Ninyo & Moore pile test ("the pile test"). *Id.* The pile test detailed soil and site conditions. *Id.*

On August 31, 2015, Buesing began working on the solar project. *Id.* at 4. On September 10, 2015, Buesing informed Helix that it encountered differing site conditions and was therefore unable to meets its contractual requirements. *Id.* at Ex. 5.

On September 23, 2015, a contract modification in the amount of $130,000 was signed by the parties. *Id.* at Ex. 6. The modification was for "pulling and drilling for remediation of piles." *Id.* Despite the modification, Buesing remained unable to meet its contractual requirements. (ECF No. 41, Ex. 6).

On October 2, 2015, due to Buesing's ongoing difficulties with pile installation, Helix and Buesing agreed to temporarily stop installation. *Id.* at Ex. 14. On October 9, 2015, Buesing advised Helix that it was unable to meet its contractual obligations. (ECF No. 33, Ex. 7).

On October 12, 2015, Helix gave Buesing written notice of default. *Id.* at Ex. 8. Helix claimed that Buesing needed to continue pulling piles and remediate the out of tolerance piles. *Id.*

On October 16, 2015, Buesing responded to the notice of default. (ECF No. 41, Ex. 18). Buesing claimed that it was unable to complete its required work because it could not continue pulling piles while simultaneously remediating the out of tolerance piles. (ECF No. 33, Ex. 10).

Additionally, on October 16, 2015, Helix gave Buesing notice that it was terminating the contract for failure to perform and job abandonment. *Id.* at Ex. 19. On November 24, 2015, Buesing formally contested Helix's assertion that it had failed to perform or had abandoned the project. *Id.* at Ex. 21.

On June 6, 2016, Buesing filed a complaint asserting three related causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. (ECF No. 1). On July 8, 2016, Helix answered and counterclaimed asserting three causes of action against Buesing: breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation. (ECF No. 8).

**II. Legal Standard**

The Federal Rules of Civil Procedure authorize summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

James C. Mahan
U.S. District Judge

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990). However, to preclude summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. Discussion

In its motion for partial summary judgment, Helix contends that it is entitled to summary judgment on Buesing's causes of action. (ECF No. 33). Moreover, Helix argues that it is entitled to summary judgment on its breach of contract and breach of the implied covenant of good faith and fair dealing counterclaims. *Id.* The court will address each argument as it sees fit.

### a. Buesing's causes of action

Helix argues that summary judgment is warranted on Buesing's breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment causes of action. *Id.* Helix contends that all three causes of action warrant dismissal because it was permitted to terminate its contract with Buesing for any reason. *See id.*

#### 1. Breach of contract

Under Nevada law, breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). A claim for breach of contract requires that a plaintiff demonstrate the following elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach. *Cohen-Breen v. Gray TV Grp., Inc.*, 661 F. Supp. 2d 1158, 1171 (D. Nev. 2009).

In determining whether a party breached, "the interpretation of a contract when the facts are not in dispute is a question of law." *Musser v. Bank of Am.*, 964 P.2d 51, 52 (Nev. 1999).

Moreover, whether a contract is ambiguous presents a question of law. *See Margrave v. Dermody Props.*, 878 P.2d 291, 293 (Nev. 1994).

A contract is ambiguous if it is susceptible to more than one interpretation. *See Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007). However, "ambiguity does not arise simply because the parties disagree on how to interpret their contract." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013). Rather, "an ambiguous contract is an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." *Id.* (quoting *Whiting Stoker Co. v. Chi. Stoker Corp.*, 171 F.2d 248, 251 (7th Cir. 1948)).

Furthermore, the court must interpret and enforce an unambiguous contract according to its plain meaning. *See Farmers Ins. Exch. v. Young*, 832 P.2d 376, 380 (Nev. 1992). Therefore, the court cannot consider extrinsic evidence, including intent, unless it first finds that the contract is ambiguous. *See id.* The court is "not free to modify or vary the terms of an unambiguous agreement." *All Star Bonding v. State*, 62 P.3d 1124, 1126 (Nev. 2003).

Here, Helix contends that Section I(3) in addendum 4 to the contract allows it to terminate the contract with or without cause. (ECF No. 33). Section I(3) provides, in relevant part:

> Helix reserves the absolute right to terminate this agreement without cause or penalty. If Helix terminates this agreement without cause subcontractor shall be entitled to payment only as follows: (a) cost of work actually completed in conformity with the agreement; plus (b) other costs actually incurred by subcontract; plus (c) fifteen percent (15%) of the costs referred to in subparagraph 1 above for overhead and profit.

(ECF No. 33, Ex. 3). Moreover, Helix's notice of termination to Buesing stated that Helix was "exercising our right to terminate for failure to perform and job abandonment." (ECF No. 33, Ex. 9).

In its response, Buesing contends that: (1) Helix's termination of the contract was not for convenience; (2) if Helix's termination was for convenience, then Buesing is entitled to contractual damages[1]; and (3) if Helix terminated the contract for cause, its termination was wrongful and in bad faith. *See* (ECF No. 40 at 11-13).

---

[1] This argument forms the basis for Buesing's motion for partial summary judgment. *See* (ECF No. 41). Buesing asks that "if the court were to determine that Helix terminated the contract

Buesing's first argument is undermined by the plain language of the contract. The court will enforce Section I(3) according to its plain meaning because neither party alleges that the provision is ambiguous. *See Farmer Ins. Exch. v. Young*, 832 P.2d at 380. The plain language of the contract permits Helix to terminate the agreement "without cause or penalty." *See* (ECF No. 33, Ex. 3). Therefore, Helix was entitled to terminate the contract with or without cause. *See id.*

Buesing's second argument is unavailing because Helix's notice of termination explicitly states that termination was "for failure to perform and job abandonment," rather than for convenience as Buesing contends. *See* (ECF No. 33, Ex. 9).

Buesing's third argument, in which it contends that "ample evidence has been disclosed to support that Helix's termination was wrongful," is unpersuasive. *See* (ECF No. 40 at 13). The plain language of the agreement explicitly permits Helix to "terminate this agreement without cause or penalty." *See* (ECF No. 33, Ex. 3). Accordingly, Helix is entitled to summary judgment on Buesing's breach of contract claim. *See All Star Bonding*, 62 P.3d at 1126.

### 2. Breach of the implied covenant of good faith and fair dealing

In its complaint, Buesing alleges that "by way of the actions detailed above, among other things, Helix breached the covenant of good faith and fair dealing implied in the contract, denying Buesing's justified expectations thereunder." (ECF No. 1 at 6). The "actions detailed above" is the alleged breach of contract by Helix. *See id.*

A claim for breach of the implied covenant of good faith and fair dealing arises when the "terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods.*, 808 P.2d 919, 922-23 (Nev. 1991). This cause of action, unlike a claim for breach of contract, requires literal compliance with the terms of the contract. *See Kennedy v. Carriage Cemetery Servs.*, 727 F. Supp. 2d 925, 931 (D. Nev. 2010).

Accordingly, the court will dismiss Buesing's breach of the implied covenant of good faith and fair dealing because it is improperly pled. *See Hilton Hotels Corp.*, 808 P.2d at 922-23.

. . .

---

for convenience, the court should enforce the clear language of the subcontract and award Buesing damages." *Id.* at 19.

James C. Mahan
U.S. District Judge

- 6 -

### 3. Declaratory judgment

The court will dismiss Buesing's declaratory judgment claim. "[A] 'claim' for declaratory relief is not a substantive cause of action at all; it is merely a prayer for a remedy." *Pettit v. Fed. Nat'l Mortg. Ass'n*, no. 2:11-cv-00149-JAD-PAL, 2014 WL 584876 (D. Nev. Feb. 11, 2014); *see Wells Fargo Bank, N.A. v. SFR Invs. Pool 1, LLC*, no. 2:15-cv-02257-JCM-CWH, 2017 WL 1902158, at *4 (D. Nev. May 9, 2017) (citing *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)); *see also Centex Homes v. Everest Nat'l Ins. Co.*, no. 2:16-cv-01275-GMN-CWH, 2017 WL 4349017 (D. Nev. Sept. 29, 2017) ("[T]he Court will interpret Plaintiff's claim for declaratory relief as a request for a remedy rather than a separate cause of action . . . ."). As Helix requests a remedy of declaratory relief, and is not a substantive cause of action, the court will dismiss the claim to the extent it purports to create a cause of action. *See Wells Fargo*, 2017 WL 1902158, at *4.

### b. Helix's counterclaims

Helix contends that it is entitled to summary judgment on its breach of contract and breach of the implied covenant of good faith and fair dealing counterclaims. (ECF No. 33). Helix argues that summary judgment is warranted because Buesing has no defense for its breach. *Id.* at 9.

### 1. Breach of contract

Helix's argument in support of summary judgment on its breach of contract counterclaim is twofold. (ECF No. 33). First, Helix argues that "no one disputes the existence of a valid contract or that Buesing breached." *Id.* at 9. Second, Helix contends that Buesing cannot support its contention that its failure to perform was an excusable breach due to differing site conditions. *See id.*

### i. Breach

The parties dispute the scope of work as memorialized in the contract. *See* (ECF Nos. 33, 40). Helix contends that Buesing breached the agreement because it was "unable to perform its scope of work and drive piles every two minutes." (ECF No. 33 at 9). Buesing disputes that it breached the contract and contends that it was not contractually obligated to drive piles every two minutes. (ECF No. 40 at 15).

Addendum 3 to the contract, which addresses scope of work, states that "all work will be performed in accordance with the contract documents." (ECF No. 33, Ex. 3). Moreover, the contract documents included the Ninyo & Moore soils report dated December 19, 2014, the SNWA soil report, and the SNWA Ninyo & Moore pile test results. (ECF No. 33, Ex. 1). As relevant to the present dispute, the SNWA Ninyo & Moore pile test indicated that pile "driving times ranged from approximately 26 to 144 seconds [1/2 to 2.4 minutes]." *Id.*

In its response, Buesing argues that it was not contractually obligated to install the piles at the rate of one every two minutes. (ECF No. 40). Buesing contends that the pile test was "a contractual representation flowing from SunEdison to Helix, and thereafter, from Helix to Buesing." *Id.* at 15.

Here, because the parties do not allege that the contract is ambiguous, the court will enforce the contract according to its plain meaning. *See Farmers Ins. Exch. v. Young*, 832 P.2d at 380. Therefore, pursuant to addendum 3, Buesing was contractually obligated to drive piles at a rate of between 1/2 to 2.4 minutes consistent with the SNWA Ninyo & Moore pile test.[2] *See* (ECF No. 33, Ex. 1). Accordingly, Buesing breached the contract by "only installing 500 piles with an average drive time of 3-5 minutes." *See* (ECF No. 40, Ex. 6).

### ii. Excuse

Helix argues that it is entitled to summary judgment because Buesing has no defense to its breach of contract. (ECF No. 33). Helix contends that Buesing cannot advance a defense of differing soil conditions because Buesing "has not identified an expert witness who is qualified to opine that the soil conditions were different." *Id.* at 10.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the

---

[2] The record further indicates that Buesing understood that the contract required pile driving times consistent with the SNWA Ninyo & Moore pile test. In an email dated September 15, 2015, Buesing stated that "this 2-minute drive time is clearly stated in our proposal and is included in our contract" and "from this point on, piles will be driven for 2 minutes per the contract." (ECF No. 33, Ex. 5).

James C. Mahan
U.S. District Judge

- 8 -

1  product of reliable principles and methods, and (3) the witness has applied the principles and
2  methods reliably to the facts of the case. Fed. R. Evid. 702.

3  The district court serves a gatekeeper function in evaluating scientific testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). When a district court is faced with a proffer of scientific testimony, it must make a preliminary determination under FRE 702 whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* at 592-93. A key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be tested. *Id.* at 593.

The objective of this gatekeeping requirement is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.* This gatekeeping requirement applies not only to scientific testimony but to all expert testimony covered by FRE 702. *Id.* at 147-49.

Here, Helix argues that Buesing's expert, Philip Coppola's "curriculum vitae does not indicate that he has any scientific, technical, or other specialized knowledge that would assist a trier of fact" to understand whether Buesing encountered differing site conditions. *See* (ECF No. 33 at 11).

In its response, Buesing contends that "Helix is incorrect that Coppola cannot opine on the impact of the differing site condition on Buesing's damage claim." (ECF No. 40 at 16). Buesing argues that "(1) Helix's premise that one must be a geotechnical engineer to opine on the existence of and impact of a differing site condition is wrong and without foundation and (2) Coppola's credentials indicate that he has the requisite knowledge to opine on the differing site conditions." *Id.* at 16-17.

In its first argument, Buesing contends that Coppola can testify as an expert on the impact of differing soil conditions because "while one may need to be a soil engineer to analyze soils, one does not need to be a soil engineer to review and interpret soil reports." *Id.* at 17. Buesing further argues that "contractors and architects review and interpret soil reports every day." *Id.*

Buesing's first argument is unavailing because Coppola's report does not address the threshold issue of whether differing site conditions were present on the property. In compiling the report, entitled "evaluation of amounts owed," Coppola reviewed "certain documents regarding the solar project." *Id.* at Ex. 25. Notably, Coppola did not visit the site or take and analyze soil samples. *See id.* Coppola's report does not provide a geotechnical engineering opinion on whether the conditions of the soil present at the project site constituted a differing site condition. *See id.* at 5. Instead, it provides an opinion on the impact of the allegedly differing site conditions. *See id.* Therefore, Coppola's report would not assist a trier of fact because it does not address whether Buesing encountered differing site conditions on the property. *See id.*; *see also* Fed. R. Evid. 702.

Similarly, Buesing's second argument fails because Coppola's credentials do not indicate that he has the requisite expertise to opine on soil conditions. Buesing notes that "Coppola has over 40 years of experience, reading, interpreting and acting on hundreds of soil reports." (ECF No. 40, Ex. 28). Yet, Coppola's credentials do not indicate that he is qualified to analyze soils.[3] (ECF No. 33, Ex. 13); *see* Fed. R. Evid. 702. Accordingly, because Buesing has not disclosed an expert witness with the requisite knowledge to testify on differing soil conditions, Buesing has no defense to its breach of contract. *See Kumho Tire Co.*, 526 U.S. at 152.

### 2. Breach of the implied covenant of good faith and fair dealing

A claim for breach of the implied covenant is duplicative with a breach of contract cause of action because "it is essentially a failsafe for when a defendant does not violate contractual terms but treats the plaintiff unfairly under it." *Kennedy*, 727 F. Supp. 2d at 931.

Here, the court concludes that Buesing breached its contract with Helix. Accordingly, Helix's motion for summary judgment on its breach of the implied covenant of good faith and fair dealing claim will be denied as moot. *See Kennedy*, 727 F. Supp. 2d at 931.

### 3. Damages

Buesing contends that summary judgment is not warranted because "Helix has not established its claimed damages." (ECF No. 40 at 18). Helix alleges that the costs of Buesing's

---

[3] Coppola has a bachelor of science degree in architecture and a bachelor of architecture degree. (ECF No. 33, Ex. 13).

breach "amount to approximately $2.6 million." (ECF No. 33 at 5). In its response, Buesing argues that "Helix's damages expert contends that Helix's damages are $801,179." (ECF No. 40, Ex. 26).

Federal Rule of Civil Procedure 56(g) states that "if the court does not grant all the relief requested by motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

Here, Helix's damage claim presents an unresolved question of fact. Accordingly, Helix is not entitled to summary judgment on its damage claim. *See* Fed. R. Civ. P. 56(g).

   c. **Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Helix's motion for partial summary judgment (ECF No. 33) be, and the same here is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that Buesing's motion for partial summary judgment (ECF No. 41) be, and the same hereby is, DENIED.

DATED July 13, 2018.

_____
UNITED STATES DISTRICT JUDGE