1
2
3
4                         UNITED STATES DISTRICT COURT
5                              DISTRICT OF NEVADA
6                                     * * *
7    BUESING CORPORATION,                        Case No. 2:16-CV-1439 JCM (NJK)
8                          Plaintiff(s),                       ORDER
9         v.
10   HELIX ELECTRIC OF NEVADA, LLC,
11                         Defendant(s).
12

13          Presently before the court are defendant/counterclaimant Helix Electric of Nevada, LLC
14   ("Helix")'s three motions in limine.  (ECF Nos. 108, 109, 110).  Plaintiff/counterdefendant
15   Buesing Corporation ("Buesing") responded.  (ECF Nos. 114, 115, 116).

**I.      INTRODUCTION**
16          In August 2015, Helix hired Buesing pursuant to a subcontract for the performance of
17   certain pile driving construction work at a project in Henderson, Nevada (the "subcontract").  The
18   contract required Buesing to install 7,898 piles at a total cost of $313,296.00 in accordance with
19   certain project documents, including a SNWA Ninyo & Moore pile test report.  The pile test report
20   contained an analysis on the site, including a soils report.  Based on the information in the report,
21   Buesing anticipated that it would install approximately 527 piles per day.

22          Once Buesing began work, it almost immediately encountered soil conditions that were
23   different than those disclosed in the pile test report.  After four days of work, Buesing had installed
24   only 500 piles, many of which were damaged and required removal.

25          Buesing subsequently informed Helix that it encountered differing soil conditions, and the
26   parties modified the contract in the amount of $130,000.00 for "pulling and drilling for remediation
27   of piles."  Despite the modification, Buesing encountered ongoing difficulties, and the parties
     ultimately agreed to temporarily stop installing piles.
28

James C. Mahan
U.S. District Judge

Shortly thereafter, Buesing informed Helix that it could no longer perform the pile work due to the differing soil conditions.  In response, Helix sent Buesing a written notice of default for Buesing's abandonment of the subcontract.  The next day, Buesing notified Helix that it would be on the site the following day resolve the issues thwarting remediation efforts.  Buesing allegedly did not cure its default, but instead ceased its operations.

Several days later, Helix terminated the subcontract, asserting that Buesing failed to perform and abandoned the job.  On that same day, Buesing sent a letter to Helix, in which Buesing stated that it had not abandoned the subcontract, but that it could not complete performance without further modification of the subcontract.  Thereafter, Helix contracted with another company to compete the pile driving work and did not compensate Buesing.

Buesing initiated the instant action, bringing three causes of action: (1) declaratory judgment; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing.  Helix filed an answer and counterclaim, asserting the same three causes of action against Buesing.  The matter is set for a bench trial on April 24, 2023.  Helix now moves the court to exclude certain witness testimony in advance of the trial.

## II.     LEGAL STANDARD

"The court must decide any preliminary question about whether . . . evidence is admissible."  Fed. R. Evid. 104.  Motions in limine are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence.  *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980).  Motions in limine may be used to exclude or admit evidence in advance of trial.  *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling in limine that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions in limine.  *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion.").

James C. Mahan
U.S. District Judge

- 2 -

"[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Conboy v. Wynn Las Vegas, LLC*, no. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. April 18, 2013).

The primary purpose of a motion in limine is to resolve evidentiary disputes without having to present potentially prejudicial evidence in front of a jury.  *See Pinal Creek Group v. Newmont Mining Corp.*, No. CV–91–1764–PHX–DAE, 2006 WL 1766494, at *1 (D. Ariz. June 26, 2006). Thus, "in the case of a bench trial, a threshold ruling is generally superfluous." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009).

The court will be in a better position to rule upon challenges to evidence during trial when there will be a fuller understanding of the issues and evidence in the case.  Therefore, the more prudent course in a bench trial is to resolve evidentiary doubts in favor of admissibility.  *See Shaw v. Citimortgage, Inc.*, 3:13-cv-0445-LRH-VPC, 2016 WL 1659973 at *2 (D. Nev. April 26, 2016).

## III.   DISCUSSION

### a.   Motion in limine #1

Helix seeks to exclude testimony and reports Buesing's expert witness Philip Coppola ("Coppola") regarding different soil conditions, asserting that Coppola is not qualified as an expert to render such opinions.

#### i.   Expert witnesses

Federal Rule of Evidence 702 provides that a witness qualified as an expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

In determining whether an expert's testimony is reliable under Rule 702, courts consider "(a) whether the theory or technique can and has been tested; (b) whether the theory or technique has been subjected to peer review and publication; (c) the known or potential rate of error for the

James C. Mahan
U.S. District Judge

- 3 -

1  technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific

2  community.  *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 945 (9th Cir. 2009) (citing

3  *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).  District judges retain "broad

4  latitude to determine" whether these factors reasonably measure the reliability of an expert

5  witness's testimony.  *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014)

6  (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

7        Exclusion of expert testimony is proper only when such testimony is irrelevant or

8  unreliable, because "[v]igorous cross-examination, presentation of contrary evidence, and careful

9  instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

   admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

10              ii.  Philip Coppola

11        In support of its motion, Helix asserts Coppola is not qualified to opine on the soil

12  conditions in the soils report nor can he respond to Helix's geotechnical expert's opinions.  (ECF

13  No. 108).  Helix points to Coppola's deposition testimony in which he admits to not having soil-

14  related certifications or licenses and that he is not a geotechnical engineer, geotechnical contractor,

15  soils engineer, or civil engineer.  (*Id.*).  Finally, Helix notes that Coppola did not perform soil

   analyses himself, nor would he be qualified to do so.  (*Id.*).

16        Buesing contends that Coppola's experience is sufficient to qualify him as an expert.  (ECF

17  No. 111).  Coppola has read, interpreted, and acted on hundreds of soils reports and has over 40

18  years of experience doing so.  (ECF No. 41-28).  Moreover, Coppola has served as an expert in a

19  plethora of construction-related disputes and has offered opinions on geotechnical issues in over

20  20 cases.  (*Id.*).

21        Buesing also submits that Coppola's opinions are based upon competent evidence.  (ECF

22  No. 111).  Indeed, Coppola bases his opinions on, *inter alia*, the subcontract, Ninyo & Moore's

23  geotechnical report and pile load testing, various records relating to the performance of the

24  subcontract, and his years of experience dealing with geotechnical issues.  (ECF No. 108-1).

25        Given Coppola's experience with soils reports and geotechnical issues, his lack of

26  certification or specific title is insufficient to preemptively disqualify him as an expert.  Moreover,

27  his testimony runs no risk of tainting a jury, as this matter is set for a bench trial.  The appropriate

28  means by which to attack Coppola's qualifications and testimony is through cross-examination

   and other evidentiary mechanisms at trial.  *See Daubert*, 509 U.S. at 596.

**James C. Mahan**
**U.S. District Judge**

- 4 -

Thus, Helix's motion in limine #1 is DENIED.

*b. Motion in limine #2*

Helix seeks to exclude all witness testimony about differing soil conditions, asserting that none of Buesing's lay or expert witnesses are qualified to render such opinions. As an initial matter, much of Helix's argument is premised on Nevada rules of evidence, which Buesing disputes. (*See* ECF Nos. 109, 115). This court is sitting in diversity, and the Federal Rules of Evidence apply. "[S]tate law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Fed R. Evid. 601; *see* Fed. R. Evid. 1101. The issue here is whether the substance of a lay witness's opinion is admissible, though, not whether the witness is competent to testify. Thus, federal law applies.

Rule 701 governs opinion testimony by lay witnesses. Lay witnesses must limit their opinion to "one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Buesing intends to present lay witness opinion testimony that concerns the witnesses' "personal knowledge of the geotechnical reports, their personal observations of actual soil and sub-surface conditions on the project, and the difficulties personally experienced during pile-driving activities." (ECF No. 115). These opinions are necessarily based on each witness's personal perception, experience, and knowledge. Moreover, the condition of the soil is critical to the resolution of this case, and the proposed lay witness opinion likely will be helpful to determine relevant facts.

Helix contends that allowing lay witness opinion on soil conditions would mislead the jury, but as the court iterated *supra*, this matter is set for a bench trial, and any potential adverse effect on a jury is immaterial.

Thus, Helix's motion in limine #2 is DENIED.

*c. Motion in limine #3*

Helix seeks to exclude testimony and reports of Coppola regarding Buesing's damages, asserting that he lacks the foundation to render such opinions. In support of its motion, Helix submits that Coppola did not rely on sufficient information to form his opinion on damages and thus he cannot be qualified as an expert. (ECF No. 110),

James C. Mahan
U.S. District Judge

Coppola relies on a number of documents containing financial data provided by Buesing as well as several items of correspondence.  (ECF No. 110-1).  He also relies on his experience and knowledge in the field and has served as an expert in over 20 cases similar to this matter.  (*Id.*). Without belaboring the same analysis that was applied to Helix's motion in limine #1 *supra*, the court finds Helix's argument insufficient to preemptively disqualify Coppola as an expert regarding damages.

Thus, Helix's motion in limine #3 is DENIED.

**IV.    CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Helix's motion in limine #1 (ECF No. 108) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Helix's motion in limine #2 (ECF No. 109) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Helix's motion in limine #3 (ECF No. 110) be, and the same hereby is, DENIED.

DATED April 7, 2023.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 6 -